BELLA CARDONNER, as Administratrix, etc., of JOHN C. CARDONNER, Deceased, Respondent, *v.* THE METROPOLITAN STREET RAILWAY COMPANY, Appellant.

*Negligence — death of a bicycle rider coming out from behind an approaching car at a street railroad crossing.*

A corporation maintaining a street railway in New York city which, at a point where its line turns from Seventh avenue into Fifty-third street, stations a man between the tracks, whose duty it is to signal cars to round the curve, and another at the crosswalk to warn any one attempting to cross Fifty-third street of the approach of a car around the curve, and which also provides a flag signal at which cars approaching from the north on the avenue stop until signaled to proceed, is not liable for the death of a bicycle rider who, after riding at the rate of from six to ten miles an hour behind a car bound south on Seventh avenue, turns out to the west when the car stops at the signal north of Fifty-third street and keeps on with unabated speed until he is struck by a car rounding the curve from the south, there being no evidence that either the signalmen or the motorman could have seen him until he came in front of the south-bound car, when it was too late to avert the collision.

APPEAL by the defendant, The Metropolitan Street Railway Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 22d day of June, 1897, upon the verdict of a jury, and also from an order entered in said clerk's office on the 22d day of June, 1897, denying the defendant's motion for a new trial made upon the minutes.

The action was brought to recover damages for the death of the plaintiff's intestate, which was caused by the alleged negligence of the defendant.

*C. F. Brown*, for the appellant.

*W. C. Beecher*, for the respondent.

PATTERSON, J.:

Upon a critical examination of all the evidence appearing on the record of the trial of this cause, we are irresistibly led to the conclusion that the court should have directed a verdict for the defendant, and, hence, that the judgment and order appealed from must be reversed.

Negligence of the defendant's servants was not shown. The accident which resulted in the death of the plaintiff's intestate happened under peculiar conditions, and the liability of the defendant for negligence of its servants must be considered, not only with reference to an emergency suddenly arising, but with regard to the preparations made by the defendant for meeting possible conditions, such as existed at the time the accident occurred; and also with reference to the conduct of the servants of the defendant in charge of the car which collided with the plaintiff's intestate, and of its servants stationed in the street to prevent a collision of vehicles with its cars. Having regard to all the circumstances and conditions existing at the time this accident occurred, we are unable to see that there was any omission of duty on the part of the defendant's servants, either on or off the car, or in the provision which had been made by the defendant to prevent such accidents as that which happened to the plaintiff's intestate; or that there was anything to submit to the jury on any of those subjects.

The accident occurred at the intersection of Seventh avenue and Fifty-third street, on the west side of the avenue. At Fifty-third street there is a curve in the line of the defendant's road where the tracks turn into Fifty-third street to run westerly to Ninth avenue. The car which collided with the plaintiff's intestate was proceeding northerly on a transit requiring it to turn into Fifty-third street. It stopped on Seventh avenue between Fifty-second and Fifty-third streets on the easterly track, and at about a point at which a signal was placed with the word "Stop" upon it. That signal was located about 80 feet south of the point at which began the curve of the tracks going into Fifty-third street, and about 129 feet from the southerly side of Fifty-third street. Stationed at Fifty-third street and between the tracks on the Seventh avenue and on Fifty-third street was a flagman, whose duty it was to give signals, and who, at the time of this accident, did signal to the motorman on the car to start and to round the curve at Fifty-third street. There was another man stationed on the crosswalk at Fifty-third street on the west side of Seventh avenue, and his duty was to signal or give warning to any one attempting to cross Fifty-third street, of the approach of a car around the curve. The signalman was so stationed at the time of the accident. On

Seventh avenue north of Fifty-third street was a flag on a standard; at that point all cars going south on the westerly track on Seventh avenue above Fifty-third street came to a stop until the motormen of such south-bound cars were signaled by the flagman to proceed. On the morning of the accident in question, the plaintiff's intestate was riding his bicycle at a rate of speed which is variously estimated at from six to ten miles an hour. He was coming down Seventh avenue and at some distance behind a south-bound car of the defendant on the westerly track above Fifty-third street. That car stopped at the flag signal above Fifty-third street. The plaintiff's intestate was riding between the rails of the westerly track, and when the car in front of him stopped, he turned out to the west, kept on without abatement of speed, and when he reached the curve on Fifty-third street and near the westerly crosswalk, he was struck by the defendant's car and sustained injuries from which he died. The question of negligence of the defendant is somewhat involved with that of the acts of the plaintiff's intestate himself, but separating the two matters and considering the relation of the defendant alone to the occurrence, it is made to appear sufficiently that great care was observed in the management of the cars of the defendant, so far as the employment of persons stationed on the street is concerned. Neither of the flagmen was shown to have omitted anything he could have done to prevent the accident. There is nothing, therefore, to show that the flagman stationed between the crosswalks on the Seventh avenue could have seen the plaintiff's intestate while he was behind the south-bound car and between the rails of the westerly track and before he turned out. There is nothing to show that the flagman on the crosswalk could have seen him until the accident was imminent or until he turned out. It was shown that ample provision was made to prevent collisions and that each of the flagmen performed his full duty.

If any negligence can be imputed to the defendant's servants, therefore, it must be to the motorman of the car, and here the evidence fails again. There was nothing to show that the motorman could have seen the plaintiff's intestate before the south-bound car stopped, or that he was in a line of vision until the plaintiff's intestate came in front of the south-bound car, at which time the car which struck the decedent was on the curve of Fifty-third

street.   There was nothing, then, to show any neglect of the motorman in not fully stopping his car, or in not making an effort to stop it. As soon as the motorman saw the plaintiff's intestate, he released the grip and applied the brake (the gong was sounding all the time), "the cable fell out and the car slid along." The motorman was performing his full duty; he was considering the condition of the avenue and of the street at the curve.   His attention was attracted to a woman who was crossing the street and who he thought might be in peril; she "jumped back" and then he saw on the other side the plaintiff's intestate coming, as all agree, at a rapid rate towards the curve, with the situation of which and the operation of cars about which, he was entirely familiar, as he was in the habit of riding twice or more every day on his bicycle across that curve.   We do not see, therefore, that there was any negligence shown on the part of the motorman.   The claim that the duty was incumbent upon the motorman in turning the curve to be vigilant in order to prevent collisions with vehicles going southward is, as a general statement, entirely correct, but under the conditions disclosed by the proof in this case we fail to see that anything is shown to have been omitted by him that prudence and care would have required.   Irrespective of any other question in the case, and without considering whether it was not clearly shown that the accident was caused by the impetuous riding of the plaintiff's intestate at a point known to him to be dangerous, we are of the opinion that, on the whole evidence, the defendant was entitled to a verdict on this question of negligence.

The judgment and order appealed from must be reversed and a new trial ordered, with costs to appellant to abide the event.

VAN BRUNT, P. J., BARRETT, INGRAHAM and McLAUGHLIN, JJ., concurred.

Judgment and order reversed, new trial ordered, cost to appellant to abide event.